IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JGB HOLDINGS, LLC, and
1101 7TH MENOMINEE LLC,

Plaintiffs,

v.

CITY OF MENOMINEE, and
BRETT BOTBYL

Defendants.

Case No. 2:26-cv-00155
Hon.

---

# COMPLAINT

Plaintiffs, JGB Holdings, LLC ("JGB") and 1101 7th Menominee LLC (collectively, "Plaintiffs" or the "JGB Parties"), by and through their attorneys, and for their Complaint (the "Complaint"), state as follows:

## Introduction and Nature of this Action

## THE PARTIES

1. JGB is a Michigan limited liability company with its registered office located at 1900 W. Big Beaver Rd., Suite 203, Troy, Michigan 48084.

2. 1101 7th Menominee LLC is a Michigan limited liability company with its registered office located at 1900 W. Big Beaver Rd., Suite 203, Troy, Michigan 48084.

3. 1101 7th Menominee LLC owns a parcel at 1107 7th Street, Menominee, Michigan 49858 ("Property") and conducts business in the City of Menominee.

4. Defendant City of Menominee ("City") is a municipal corporation with its principal place of business at 2511 10th Street, Menominee, Michigan 49858.

5. Defendant Brett Botbyl ("Manager") is the City Manager for the City of Menominee.

**JURISDICTION AND VENUE**

6. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343. This is an action to enforce constitutional rights pursuant to the United States Constitution.

7. This Court has authority to award the requested declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202, and 1343, Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of the Court.

8. Supplemental jurisdiction of Plaintiffs' state court claims is proper pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this court under 28 U.S.C. § 1391(b) because Defendant City is a municipality located within Menominee County, Michigan, Defendant Botbyl engages in his official duties within this District, and because a substantial part of the acts or omissions giving rise to this action arose from events occurring within this District.

**GENERAL ALLEGATIONS**

10. JGB was incorporated in June of 2023 for the sole purpose owning and operating a Michigan Cannabis Regulatory Agency ("CRA") licensed adult-use cannabis retail establishment in Menominee, Michigan.

11. In 2020, years before JGB incorporated to own and operate a licensed adult-use cannabis retail establishment in Menominee, Michigan, the City was embroiled in litigation with multiple cannabis companies who were all vying for a limited number of licenses.

12. At the time, only two (2) retail cannabis licenses were available.

13. After the City issued those two licenses, the other applicants who had not been issued licenses sued the City and litigation ensued for nearly two years.

14. The City resolved that litigation by settling with those applicants and they all received cannabis licenses (the "2023 Settlement Agreement").

15. Under the 2023 Settlement Agreement, the City issued licenses to (i) Agri Med, (ii) NU Group, (iii) Lume, (iv) Highwire Farms, (v) Higher Love, and (vi) Green Pharm.

16. All of those cannabis companies opened for business, except Highwire; three years have passed since the 2023 Settlement Agreement but Highwire still has not opened.

17. In response to the litigation, the City also "uncapped" the number of available licenses and amended its marijuana ordinance in 2023 so that there was an "unlimited" number of licenses available in the City.

18. The 2023 Settlement Agreement required the City to "introduce for consideration by the City Council an amendment to the Marihuana Establishment Ordinance to completely uncap the number of licenses available to operate recreational marihuana retail establishments in the City of Menominee."

19. As a result, on August 21, 2023, the City ordinance was updated to provide:

> (a) The City hereby authorizes … the following marihuana establishments within the boundaries of the City, as authorized by … the Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951, et seq. ["MRTMA]…
>
> (b) The marihuana establishments and number authorized pursuant to this chapter are:
>
> ***
>
> ***Retailer … Unlimited***.

Men. City Ord. § 11-3 (emphasis added) (eff. Date Aug. 21, 2023).

**JGB's Approval for a Provisional Building License in May of 2025**

20. In or around June of 2023, JGB submitted its prequalification application for a cannabis license with the CRA.

21. In or around August of 2023, the CRA approved JGB for prequalification.

22. JGB's prequalification status was subsequently renewed for an additional two-year period on August 29, 2025.

23. On January 10, 2025, after receiving its approved prequalification from the CRA, Plaintiffs entered into a Real Estate Purchase Agreement ("Purchase Agreement") through 1101 7th Menominee LLC, to purchase land within the City located at 1101 7th Ave., Menominee, Michigan 49858 ("Property"), from Veridea Group, LLC ("Seller").

24. The Property is located within a district of Menominee that is generally approved for marijuana establishments, subject to certain buffer zone distances as set forth in Menominee's marijuana establishment ordinance. 1101 7th Menominee LLC entered into the Purchase Agreement for the sole purpose of JGB's efforts to build, own, and operate an adult-use cannabis retail establishment on the Property.

25. That same day, JGB received its preliminary engineering plans and architecture plans for the proposed build-out of the retail cannabis establishment.

26. On or about January 15, 2025, JGB submitted its application to the City for approval to operate a marijuana retail establishment at the Property ("Permit Application").

27. At the time the Permit Application was filed, the number of available licenses in the City was "unlimited," under the amended ordinance. Men. City. Ord. § 11- 3.

28. JGB paid the requisite $5,000 license fee and $1,500 administrative application fee to the City for the Permit Application.

29. The Permit Application did not contain a waiver of claims, causes of action, or a covenant not to sue for legal disputes.

30. The Permit Application contained a verification provision, which stated:

> I hereby certify that the information provided above is accurate to the best of my knowledge, information and belief. I agree to operate the aforementioned business in compliance with the guidelines established by the City of Menominee Code. In addition, I agree to cooperate with the investigator/inspector assigned to screen this application/documents.

**Ex. 1, JGB's Adult Use Marijuana Establishment Permit Application**.

31. The City Code sets forth seven (7) bases upon which a retail marijuana license can be denied, and it also guarantees a hearing to any aggrieved applicant:

> Subject to the notice and hearing provisions in this section, a license applied for or issued under this chapter may be denied or revoked on any of the following bases:
>
> (1) Any violation of this chapter;
>
> (2) Any conviction of delivery of a controlled substance to a minor;
>
> (3) City Manager finding of fraud, misrepresentation, or the making of a false material statement by the applicant or any stakeholder of the applicant while engaging in any activity for which this chapter requires a license or in connection with the application for a license to request to renew a license;
>
> (4) Sufficient evidence that the licensee lacks, or has failed to demonstrate, the requisite professionalism and/or business experience required to assure strict adherence to this chapter, and the rules and regulations governing the Act;
>
> (5) The license holder or any of its stakeholders is in default to the City personally or in connection with any business in which they hold an ownership interest, for failure to pay property taxes special assessments, fines, fees, or other financial obligation;
>
> (6) The marihuana establishment is determined by the City to have become a public nuisance; and

(7) The Michigan Cannabis Regulatory Agency of the Michigan Department of Licensing and Regulatory Affairs has denied, revoked, or suspended the applicant's state operating license. [Men. Ord. § 11-12(b)]

32. On February 7, 2025, Defendant Botbyl sent an email to Julius Zaitona ("Zaitona"), owner of JGB, regarding JGB's Adult Use Marijuana Application, in which Defendant Botbyl denied the application due to JGB's proposed location not being in compliance with the minimum 300-foot buffer zone between marijuana facilities and establishments and "any daycare, child care, and playground properties." Specifically, Defendant Botbyl stated, "[u]pon measurement, your proposed location would be in violation of the required 300 foot setback of the playground owned by the City located in River Park Campground."

33. Due to Menominee's zoning ordinances requiring certain distances between other marijuana retail establishments, and upon the recommendation of one or more City representatives, JGB was advised that it would need to adjust the Property's lot lines in order to meet the City marijuana establishment buffer requirements.

34. Accordingly, Plaintiffs commissioned a surveyor to redraw the Property's lot lines in furtherance of JGB's effort to apply for and ultimately operate a licensed marijuana retail establishment.

35. On or about February 27, 2025, JGB re-submitted an identical Permit Application, with the only changes relating to a revised site plan reflecting the proposed modified lot lines.

36. JGB was not required to pay new or additional fees associated with the amended application.

37. JGB was not required to sign a waiver in connection with the amended application – instead, the application contained the same verification provision as JGB's initial application.

38. On February 27, 2025, Defendant Botbyl emailed Zaitona to confirm receipt of JGB's amended application and site plan and provide further direction, as follows:

> "Please provide the updated information on your land split designation and paperwork that was provided to you. When your paperwork is complete, you can email it to me and I will forward onto our Assessor Nikki Linder. We will bring the updated land split information to Planning Commission at their meeting for their approval/denial of your requested land split that would make your amended application in conformance with our zoning codes with respect to setbacks."

**Ex. 2, Email Correspondence with Botbyl 2-27-2025.**

39. Defendant Botbyl did not inform Zaitona or JGB's attorney, Johnson Franso, that a signed waiver would be required as part of the amended application.

40. On or about April 3, 2025, 1101 7th Menominee LLC entered into a First Amendment to the Purchase Agreement.

41. On April 8, 2025, the City's Planning Department received a Land Division & Boundary Adjustment Application from Robert E. Mahaney, Manager of Veridea Group, LLC, which sought to adjust the boundary lines between two (2) of the three (3) parcels on the Property, for the benefit of JGB and in furtherance of its intent to operate a marijuana establishment. **Ex. 3, Land Division & Boundary Adjustment Application**.

42. The request for a boundary adjustment was placed on the agenda for the City's Special Planning Commission meeting on May 22, 2025. **Ex. 4, Agenda**.

43. The City Assessor, Nikki Linder, submitted a Special Planning Commission Agenda Item ("Agenda Item") for the May 22, 2025 meeting, which described the purpose, background, budget impact, and staff recommendation/action requested regarding the boundary adjustment application. **Ex. 5, Agenda Item.**

44. Assessor Linder informed the Special Planning Commission, "[t]he purpose of this adjustment is to allow a potential buyer to construct a cannabis shop on Parcel B (see survey) to be compliant with setbacks." **Ex. 5.**

45. Additionally, Assessor Linder informed the Special Planning Commission, "[t]he boundary adjustment will help facilitate development of this commercial property making the property and surrounding properties more valuable." **Ex. 5.** Further, "[t]he addition of real property to these vacant parcels will increase the tax base." *Id*.

46. Accordingly, Assessor Linder advised the Special Planning Commission, "[a]fter review, the division meets all requirements of the Land Division Act and has the approval of the Assessing Department. Staff requests the Planning Commission approve/deny the application." **Ex. 5**.

47. At the May 22, 2025 meeting, after hearing public comment, the Special Planning Commission carried a motion to approve the boundary adjustment. **Ex. 6, Minutes**.

48. On the morning of May 27, 2025, following the City's approval of the boundary adjustment, JGB's counsel, Johnson Franso, sent an email to Defendant Botbyl regarding the status of JGB's marijuana application for 1101 7th Ave., Parcel B. **Ex. 7, Email 5-27-2025.**

49. Botbyl did not respond to the email on May 27, 2025.

50. On May 28, 2025, having heard nothing regarding JGB's amended application following the approved boundary line adjustment, Zaitona flew to Menominee, Michigan to retrieve the Provisional License from Defendant Botbyl in person.

51. Defendant Botbyl had previously communicated with JGB's attorney, Johnson Franso, on multiple occasions, including Franso's email on May 27, 2025, and was aware that JGB was represented by counsel.

52. Nevertheless, when Zaitona met with Defendant Botbyl, Defendant Botbyl required Zaitona to execute a new application signature page before he would provide Zaitona with the Provisional License for JGB.

53. Despite having knowledge that JGB was represented by counsel, Defendant Botbyl did not inform JGB's attorney of the new application signature page, much less provide a copy of the new application signature page, before requiring Zaitona to sign it on behalf of JGB.

54. Nor did Defendant Botbyl explain to Zaitona the purpose or significance of the new application signature page other than to say that a provision was added to the signature page after JGB had already submitted an initial and amended application.

55. The new application was identical to JGB's amended application submitted on or about February 27, 2025, except for changes to the signature page – most notably, replacement of the verification provision contained in JGB's original and amended application with the following provision, which stated:

> Acknowledgment, Waiver, and Verification
>
> I acknowledge that I, the applicant, am aware that all matters related to marijuana, growing, cultivation, possession, dispensing, testing, safety compliance, transporting, distribution, and use are currently subject to State and Federal laws, Rules, and Regulations, and that the approval or granting of a license hereunder does not exonerate nor exculpate myself, the applicant, from abiding by the provisions and requirements and penalties associated with those laws, rules, and regulations or exposure to any penalties associated therewith; and further myself, the applicant, waives and forever releases any claim, demand, action, legal redress, or recourse against the City of Menominee, its elected and appointed Officials and its Employees and Agents for any claims, damages, liabilities, and any right to challenge the City of Menominee's marijuana licensing process, criteria, license issuance, renewal, and/or licensing application denials.

**Ex. 8, New Waiver Provision**.

56. JGB was neither required to re-submit its application nor pay an additional application fee to receive the Provisional License.

57. Zaitona, having flown to Menominee, Michigan for the sole purpose of retrieving the Provisional License, and based on the representations of Defendant Botbyl that Zaitona would have to sign the new application before receiving the Provisional License, signed the new application signature page.

58. After Zaitona signed the new application signature page, Defendant Botbyl responded to Johnson Franso's May 27, 2025 email, copying Zaitona and Robert Mahaney, Manager of Veridea Group, as follows:

> Please find attached a copy of a Provisional License. This license is only for construction purposes and is not valid for Retail Sales. **A new Retail License will be issued upon completion of all State and Local inspections and an occupancy permit.**

**Ex. 7** (emphasis added).

59. Defendant Botbyl attached the Provisional License to JGB Holdings, LLC for the construction of JGB's cannabis retail establishment ("Provisional License") on the Property. **Ex. 9, Provisional License.**

60. Botbyl did not provide JGB or its counsel with an executed copy of the new application signature page he required Zaitona to sign on May 28, 2025, and Botbyl's email is silent regarding the same.

61. Based on Defendant Botbyl's unequivocal representation that a retail license "will be issued" after completion of inspections and issuance of an occupancy permit, as well as multiple oral assurances by City representatives regarding the same, Plaintiffs proceeded, through 1101 7th Menominee LLC, with closing on the Property in early June 2025 for a purchase price of $1,750,000.00.

62. On June 2, 2025, the Seller executed a Warranty Deed conveying the Property to JGB's Affiliate, 1101 7th Menominee LLC. **Ex. 10, Warranty Deed**.

63. Subsequently, 1107 7th Menominee LLC retained TriMedia Environmental & Engineering Svc LLC to prepare a Baseline Environmental Assessment for the Michigan Department of Environment, Great Lakes, and Energy, which report was completed on July 18, 2025.

**Defendant Botbyl Fraudulently Induced JGB to Sign an Invalid and Unconstitutional Waiver**

64. The City's ordinance requires, as a condition to obtain an Adult Use Special Permit Application, that the applicant agree that if it is found liable for any marihuana-related offense, that it will agree to hold the City harmless. Men. City Ord. § 11-4(d)(7) (the "Waiver Ordinance").

65. To effectuate this, the Waiver Ordinance states every permit applicant must give:

> A signed acknowledgment that the applicant is aware and understands that all matters related to marihuana … are currently subject to state and federal laws, rules, and regulations and that the approval or granting of a license hereunder does not exonerate or exculpate the applicant from abiding by the provisions and requirements and penalties associated with those laws, rules, and regulations, or exposure to any penalties associated therewith; and further, the applicant waives and forever releases any claim, demand, action, legal redress, or recourse against the City, its elected and appointed officials, and its employees and agents for any claims, damages, liabilities, causes of action, damages, or attorney fees that the applicant may incur as a result of the violation by the applicant[.]

Men. City Ord. § 11-4(d)(7).

66. However, the language in the above Waiver Ordinance was not included on the original Permit Application that JGB submitted on January 15, 2025 or the amended Permit Application that JGB submitted on or about February 27, 2025.

67. The Waiver Ordinance has never been amended.

68. If the Waiver Ordinance were to be amended, it could only be done via a formal amendment, requiring both a public hearing, notice, and publication – which undisputedly has never happened. MCL 117.3(k); Men. City Ord. § 2.12; 2.15.

69. Any amendment to an existing ordinance must be approved by the City Council. Men. City Ord. § 2.11 ("those acts of the city council shall be by ordinance which … Amend or repeal any ordinance previously adopted … Acts other than those referred to in the preceding sentence may be done either by ordinance or resolution").

70. Anything less than a formal amendment, such as a City Council resolution, is not sufficient in order to change the waiver requirement in the above ordinance.

71. JGB's amended Permit Application submitted on or about February 27, 2025, which contained identical information about JGB as the pages appended to the new application signature page that Botbyl required Zaitona to sign on May 28, 2025, had no waiver or release of claim language. It only stated that the applicant "is responsible for being sufficiently familiar with and having a working knowledge of the ordinance requirements" and directed the applicant to go to the City's website to pull a copy of the applicable ordinance.

72. Yet, for JGB to receive a provisional license, Botbyl required Zaitona to sign a new application signature page containing one material change: the inclusion of a broad waiver that exceeds the waiver language to be included in an application as required by the ordinance. Men. City Ord. § 11-4(d)(7).

73. The City should have provided the Provisional License to JGB based on the amended application after the boundary line adjustment was approved by the Special Planning Commission without requiring Zaitona to sign an invalid, unconstitutional waiver on the new application signature page.

**<u>The New Waiver on the City's Application Form is Unconstitutional and Unenforceable</u>**

74. Evidently, sometime between when JGB submitted its original and amended Permit Applications and May 28, 2025, when Botbyl required Zaitona to sign the new application

signature page before he would provide JGB's Provisional License, someone at the City changed the online application form and added a waiver and release of claims that did not previously exist (the "New Waiver").

75. The New Waiver language broadly purports to require an applicant to agree that it "waives and forever releases any claim, demand, action, legal redress, or recourse against the City … for any claims, damages, liabilities, and any right to challenge the City of Menominee's marijuana licensing process, criteria, license issuance, renewal, and/or licensing application denials." **Ex. 8.**

76. Defendant Botbyl said nothing of this New Waiver language when corresponding with Zaitona or JGB's counsel, Johnson Franso.

77. The New Waiver language is nonetheless inapplicable for several reasons.

78. First, this New Waiver language was added to the application without any action by the City Council, but only the City Council had authority to amend this language; thus, the New Waiver language is not authorized or permitted and should be found to be invalid.

79. Additionally, the New Waiver language that was eventually added applies broadly to "waive and forever release any claim, demand, action, legal redress, or recourse against the City … its elected and appointed Officials … for any claims, damages, liabilities, and any right to challenge the City['s] marijuana licensing process, criteria, license issuance, renewal, and/or licensing application denials."

80. Prospective waivers like the New Waiver have been struck by courts as violative of the unconstitutional conditions doctrine, meaning the government has improperly attached a "condition" in order to apply for a government benefit, such as a license or a permit.

81. Under the unconstitutional conditions doctrine, the government cannot attach an unconstitutional condition in order to apply for a governmental benefit, such as a license or permit. *See e.g., AFT Mich. v. Michigan,* 497 Mich. 197, 226, 866 N.W.2d 782 (2015) (the government "cannot attach conditions to government benefits that effectively coerce individuals into relinquishing their constitutional rights").

82. As a general matter, the government can choose to offer or not offer public benefits or privileges as it sees fit (public funds, public employment, a license, etc.), and it can condition the receipt of these benefits on compliance with certain obligations" but "[f]rom time to time, though, the government asks for too much and poses an unreasonable choice" and "[w]hen that happens the unconstitutional-conditions doctrine vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Herschfus v. City of Oak Park, Michigan,* 150 F.4th 489, 498 (6th Cir. 2025) (citation and quotation omitted).

83. In most unconstitutional-conditions doctrine cases, the underlying constitutional right at issue is either under the First Amendment or Takings Clause. Many of these cases also deal with government permitting and licensing procedures." *Gmeiner v. Kent,* 2025 WL 2848543, at *3 (W.D. Mich. 2025) (citation omitted). "Because of the typically broad powers wielded by permitting officials, landowners who seek governmental authorization to develop their properties are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine permits." *Koontz v. St. Johns River Water Mgmt. Dist.,* 570 U.S. 595, 605 (2013) (quotation and citation omitted). The doctrine also "prohibits the government from conditioning benefits on a citizen's agreement to surrender due process rights." *R.S.W.W. Inc. v. City of Keego Harbor,* 397 F.3d 427, 434 (6th Cir. 2005).

84. "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Sure-Tan, Inc. v. N.L.R.B.,* 467 U.S. 883, 896-97 (1984). Thus, "[t]he filing of a lawsuit to redress grievances is clearly protected under the First Amendment." *Eckerman v. Tenn. Dep't of Safety,* 636 F.3d 202, 208 (6th Cir. 2010).

85. "Failing to give like treatment to legislative conditions on building permits would thus 'relegate [the just compensation requirement] to the status of a poor relation' to other constitutional rights." *Sheetz v. Cnty. Of El Dorado, California,* 144 S.Ct. 893, 902, 601 U.S. 267, 279 (2024) (citation and quotation omitted).

86. JGB Parties' constitutional rights include, but are not limited to, rights arising pursuant to the First Amendment.

87. The right to seek redress via the court system is a First Amendment right and the New Waiver conditions an applicant seeking a marijuana retail license to give up that right merely to apply for a license.

88. A "predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing." *Charter Township of Canton v. 44650, Inc.,* 12 N.W.3d 56, 76, 346 Mich.App. 290, 326-27 (2023) (citation omitted).

89. Thus, a municipality cannot require that those doing business with it agree to release and discharge the municipality from having to follow the law or to give up its property rights without any recourse.

90. While courts have permitted language requiring permit applicants to indemnify the government for the applicant's own conduct, courts have specifically applied the unconstitutional conditions doctrine to invalidate municipal applications that, as a condition to obtaining a

government-issued permit or license, attempt to force applicants to waive future claims against the government for the government's own misconduct. *See e.g., Stand Up America Now v. City of Dearborn,* 969 F.Supp.2d 843, 849 (E.D. Mich. 2013).

91. Requiring applicants to waive future claims against the government for the government's own misconduct is unconstitutional as it violates applicants' First Amendment right to petition the government for redress of injuries via the court system, as well as requiring applicants to waive their rights to bring constitutional-based claims for government misconduct.

92. The New Waiver is invalid under the unconstitutional conditions doctrine.

93. Prospective waivers releasing claims for unknown future misconduct, like the New Waiver, have also been found to be unenforceable. *See Adams v. Philip Morris, Inc.,* 67 F.3d 580, 584, 1995 Fed. App. 0309P (6th Cir. 1995); *Lil' Man In The Boat, Inc. v. City and Cnty. Of San Francisco,* 2017 WL 3129913, at *9 (N.D.Cal. 2017).

94. The New Waiver is invalid because it purports to waive claims for unknown, future misconduct by the City.

95. In addition, the New Waiver is invalid under the MRTMA, MCL 333.27956(2)(b):

> A municipality may adopt other ordinances that are not unreasonably impracticable and do not conflict with this act or with any rule promulgated pursuant to this act and that … regulate the time, place, and manner of operation of marihuana establishments and of the product, manufacture, sale, or display of marihuana accessories…[.]

96. Therefore, any ordinance setting forth a waiver for a marijuana establishment must not be unreasonably impracticable and must not conflict with MRTMA. An ordinance is deemed "unreasonably impracticable" under MRTMA if it would "subject licensees to unreasonable risk or require such a high investment of money, time, or any other resource or asset that a reasonably prudent businessperson would not operate the marihuana establishment." MCL 333.27953(cc).

97. A municipality "is precluded from enacting an ordinance if … the ordinance is in direct conflict with the state statutory scheme…[.]" *People v. Llewellyn,* 257 N.W.2d 902, 904, 401 Mich. 314, 321-22 (1977). "A direct conflict exists when an ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits." *Id.* at 322, n. 4.

98. A waiver like the New Waiver creates "unreasonable risk or require[s] such a high investment of money, time, or any other resource or asset that a reasonably prudent businessperson would not operate the marihuana establishment" because, as is the case here, a marijuana licensee could invest millions of dollars and many months of time, only to have zero recourse against government misconduct at the end of the process, if the New Waiver is upheld. For example, under the language of the New Waiver, the City could keep the significant application fees but never process an application, and the applicant would have no recourse.

99. The New Waiver is invalid because it conflicts with MRTMA.

**The Plemel Lawsuit and Licensure Cap Election**

100. On July 15, 2025, a City Council member, William Plemel, filed a lawsuit against the City alleging that a special election set for August 5th was illegal ("Plemel Lawsuit").

101. On August 1, 2025, the Menominee Circuit Court issued an opinion from the bench permitting the City to go forward with its special election polling voters on whether to cap the number of marijuana retail establishments to nine.

102. On August 5, 2025, the City held the aforementioned special election, polling voters on whether to cap the number of marijuana retail establishments in Menominee to nine, but this special election was subsequently invalidated by the Menominee Circuit Court on August 26, 2025.

103. Defending Menominee, a Local Ballot Question Committee whose stated purpose was to support a ballot initiative to prohibit marihuana establishments within the City of

Menominee, intervened in the Plemel Lawsuit and demanded that an injunction be entered barring any new licenses from being issued in the City under further order of the Court.

104. On November 4, 2025, a measure was placed on the regular election ballot for City residents to vote on whether to limit the number of cannabis dispensaries in the City to nine.

105. That measure passed by majority vote in favor of implementing a cap.

106. As of this filing, only eight marijuana establishments are open in the City.

107. The City has not yet passed an ordinance to implement a cap on the number of cannabis dispensaries in the City to nine.

108. As of this filing, no law, ordinance, moratorium, ballot initiative, or order is in place prohibiting the City from permitting a ninth marijuana establishment to open.

109. Defendants, Botbyl and City, issued the Provisional License to JGB prior to the August 5, 2025 special election which has since been invalidated.

110. Defendants, Botbyl and City, issued the Provisional License to JGB prior to the November 4, 2025 ballot measure limiting the number of cannabis dispensaries in the City to nine.

111. Defendants, Botbyl and City, made promises to JGB, both orally and in writing, prior to the ballot measure, that it would receive a retail license for its retail cannabis establishment upon the completion of State and Local inspections and receipt of an occupancy permit.

112. Plaintiffs reasonably relied upon the Defendants' actions in spending more than $1,750,000 in securing the Property and commencing efforts to plan the development of the Property.

**COUNT I – PRELIMINARY AND PERMANENT INJUNCTION**

113. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

114. Under Rule 65 of the Federal Rules of Civil Procedure, a district court may issue a temporary restraining order or preliminary injunction, Fed. R. Civ. P. 65.

115. The purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *EOG Resources Inc. v. Lucky Land Management LLC,* 134 F.4th 868, 883 (6th Cir. 2025) (quoting *Starbucks Corp. v. McKinney,* 602 U.S. 339, 346 (U.S. 2024).

116. "The preliminary injunction simply puts the case in a holding pattern and 'balance[s] the equities as the litigation move[s] forward.'" *Id.* (quoting *Trump v. Int'l Refugee Assistance Project,* 582 U.S. 571, 580, 137 S.Ct. 2080, 198 L.Ed.2d 643 (2017) (per curiam).

117. In analyzing whether injunctive relief is warranted, a court considers four well-recognized factors: (1) whether the moving party demonstrates a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. *Ohio Republican Party v. Brunner,* 543 F.3d 357, 361 (6th Cir. 2008) (quoting *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union v. Blackwell,* 467 F.3d 999, 1009 (6th Cir. 2006)).

118. The four factors are not prerequisites that must be established at the outset but are interconnected considerations that must be balanced together. *Ne. Ohio Coal.,* 467 F.3d at 1009.

119. However, "the demonstration of some irreparable injury is a sine qua non for issuance of an injunction. *Patio Enclosures, Inc. v. Herbst,* 39 F.App'x 964, 967 (6th Cir. 2002).

120. The burden is upon the party seeking injunctive relief to demonstrate that "circumstances clearly demand" a preliminary injunction. *Overstreet v. Lexington-Fayette Urban County Government,* 305 F.3d 566, 573 (6th Cir. 2002).

121. As more fully outlined above and below, Plaintiffs will likely be successful on the merits. JGB applied for an adult use recreational marijuana permit and received a provisional license to build its facility prior to the special election that limited the number of marijuana retailers in Menominee to nine.

122. The Court should enjoin the application and enforcement of the license cap as it relates to JGB since JGB's provisional license was issued prior to the ballot proposal measure. Courts have enjoined enforcement of amended ordinances that impact a party's vested rights. *Nasierowski Bros Inv. Co. v. City of Sterling Heights,* 949 F.2d 890, 897-88 (6th Cir. 1991).

123. The harm to Plaintiffs if injunctive relief is not granted is irreparable:

a. JGB has the right to build an adult use recreational marijuana facility in Menominee and to be approved for a retail license upon completion of state and local inspections and receipt of an occupancy permit;

b. JGB will suffer the loss of its property interest and 1101 7th Menominee will lose income expected from the lease of its property to JGB;

c. JGB will lose its ability to secure a state license and will lose its business.

124. Plaintiffs have no adequate remedy at law.

125. The harm to Plaintiffs if the injunction is not granted far outweighs any harm to Defendants if the injunction is granted.

126. Further, Defendant City will not suffer any harm if the Court requires the City to follow the valid City ordinances that were effective as the time of JGB's amended application.

127. Accordingly, Plaintiffs are entitled to temporary and permanent injunctive relief, attorneys' fees, costs, and any other relief the Court deems just and appropriate.

**COUNT II - DECLARATORY RELIEF**

**(Infringement on First Amendment Rights)**

128. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

129. The First Amendment to the United States Constitution guarantees its citizens the rights to free speech, assembly, association, and petition. U.S. Const. Amend. I.

130. “[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.” *Sure-Tan, Inc. v. N.L.R.B.,* 467 U.S. 883, 896-97 (1984). Thus, “[t]he filing of a lawsuit to redress grievances is clearly protected under the First Amendment.” *Eckerman v. Tenn. Dep't of Safety,* 636 F.3d 202, 208 (6th Cir. 2010).

131. The right to seek redress via the court system is a First Amendment right and the New Waiver conditions an applicant seeking a marijuana retail license to give up that right merely to apply for a license.

132. Under the unconstitutional conditions doctrine, Defendant City may not require municipal applications that, as a condition to obtaining a government-issued permit or license, attempt to force applicants to waive future claims against the government for the government's own misconduct. *See e.g., Stand Up America Now v. City of Dearborn,* 969 F.Supp.2d 843, 849 (E.D. Mich. 2013).

133. Requiring applicants to waive future claims against the government for the government's own misconduct is unconstitutional as it violates applicants' First Amendment right to petition the government for redress of injuries via the court system, as well as requiring applicants to waive their rights to bring constitutional-based claims for government misconduct.

134. The New Waiver infringes on Plaintiffs' First Amendment right of access to courts for redress of wrongs.

135. The New Waiver is invalid under the unconstitutional conditions doctrine.

136. The New Waiver is invalid because it purports to waive claims for unknown future misconduct by the City.

137. The New Waiver is unconstitutional, as it violates the state and federal constitution's guarantees under the First Amendment.

138. The New Waiver is enforced by Defendant City under color of state law.

139. The Michigan Constitution states: "The people have the right peaceably to assemble, to consult for the common good, to instruct their representatives and to petition the government for redress of grievances." MI Const. Art. I, § 3.

140. Similarly, the First Amendment to the U.S. Constitution, made applicable to the states through the 14th Amendment, states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

141. The New Waiver is also invalid because it conflicts with MRTMA.

142. Accordingly, Plaintiffs are entitled to a declaratory judgment that the New Waiver is invalid, unenforceable, and unconstitutional, further necessary or proper declaratory relief, attorneys' fees, costs, and any other relief the Court deems just and appropriate.

**COUNT III - SUBSTANTIVE DUE PROCESS VIOLATION**

143. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

144. In or around July of 2023, JGB submitted its prequalification application for a cannabis license with the Michigan Cannabis Regulatory Agency.

145. In or around August of 2023, the CRA approved JGB for prequalification for a cannabis license.

146. In early 2025, JGB submitted its application to the City for approval to operate a marijuana retail establishment at the Property.

147. On May 27, 2025, Plaintiffs' attorney sent an email to Defendant Botbyl regarding the status of a marijuana application for 1101 7th Ave., Parcel B.

148. On May 28, 2025, JGB received a Provisional License from the City, clearing the way for JGB to begin development of the Property.

149. Plaintiffs have constitutionally protected property interests in the Provisional License from the City for the construction of a retail cannabis establishment on the Property.

150. JGB applied for and was granted a Provisional License from the City to construct the build-out of the property to conform to its specific intended use as a retail cannabis establishment, in accordance with site plans approved by the City.

151. To date, Plaintiffs have incurred millions of dollars in costs and expenses in purchasing and preparing the Property for use as a marijuana retail establishment.

152. Under the state and federal constitutions, Plaintiffs have a protected interest and vested rights in the Provisional License and use of a building on the Property.

153. Plaintiffs have been financially damaged and have also suffered irreparable injuries due to the failure of the Defendants to comply with their legal duties and violation of Plaintiffs' constitutionally protected rights.

## COUNT IV – EQUAL PROTECTION

## (42 U.S.C. § 1983)

154. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

155. Defendants issued necessary approvals and allowed eight other marijuana retail establishments to operate in Menominee based on the same ordinances that existed when JGB submitted its original and amended Permit Applications.

156. Defendants intentionally treated JGB differently than similarly situated entities by requiring JGB to sign a new waiver attached to the City's permit application, which was not approved by the City Council or authorized by the applicable City Ordinance, before Defendants would process JGB's Permit Application and provide JGB with a provisional building license, but it did not require other applicants to sign such a waiver before providing a provisional building license, creating a selective and non-uniform application of government policies.

157. Defendants lacked any rational basis for singling out and discriminating against JGB.

158. Defendants' unequal treatment of JGB violated the Equal Protection Clause.

159. Defendants' conduct shocks the conscience and deprived JGB of its right to equal protection.

160. Plaintiffs have been financially damaged and have also suffered irreparable injuries due to Defendants' discriminatory conduct and unequal treatment of Plaintiffs, and they seek punitive damages, attorney fees, and costs pursuant to 42 U.S.C. § 1983.

**COUNT V – BREACH OF CONTRACT**

161. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

162. A party asserting a breach of contract must establish by the preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in [injury] to the party claiming breach. *Miller-Davis Co v. Ahrens Constr, Inc.,* 495 Mich. 161, 178; 848 N.W.2d 95 (2014).

163. In Michigan, the essential elements of a valid contract at (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Thomas v. Leja,* 187 Mich.App. 418, 422; 468 N.W.2d 58 (1991).

164. On May 28, 2025, JGB and Defendant City entered into a contract for the issuance of a retail cannabis license "upon the completion of all State and Local inspections and an occupancy permit." **Ex. 7.**

165. The contract was supported by legal consideration through Defendants Botbyl and City promising the issuance of a retail cannabis license in exchange for JGB's license and administrative application fees, successful completion of State and Local inspections, and receipt of an occupancy permit following construction of the retail cannabis establishment on the Property.

166. The City has committed anticipatory breach of the contract through the impending passage of an ordinance limiting the number of marijuana facilities to nine.

167. Under the doctrine of anticipatory repudiation, "if, before the time of performance, a party to a contract unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance." *Stoddard v Mfr Nat'l Bank of Grand Rapids,* 234 Mich App 140, 163; 593 NW2d 620 (1999).

168. "In determining whether an anticipatory breach has occurred, it is the party's intention manifested by acts and words that is controlling, and not any secret intention that may be held." *Paul v. Bogle,* 193 Mich.App. 479, 493-494; 484 N.W.2d 728 (1992), citing *Carpenter v. Smith,* 147 Mich.App. 560, 565; 383 N.W.2d 248 (1985).

169. An "anticipatory breach" does not refer to the duty not to repudiate a contract. Rather, it refers to the duty of rendering a performance for which the nonbreaching party bargained and which the breaching party has specifically promised. *Stanton v. Dachille,* 186 Mich.App. 247, 252 (1990) (citing 5 Corbin, Contracts, § 1053, p 309).

170. The City has manifested by acts and words in its ballot initiative to amend the ordinance, which was passed by majority vote in the November 4, 2025 action, that it will not issue more than nine (9) cannabis retail licenses.

171. The time for performance by the City has not yet occurred, as final City inspections cannot occur until after JGB has constructed the building. However, the City has expressed through its statements, conduct, and actions, that it may not grant JGB a marijuana retail license, which *must* be issued upon completion of all State and City inspections.

172. Because of the City's anticipatory breach, Plaintiffs have been financially damaged and have also suffered irreparable injuries due to the failure of Defendants to perform their obligations under the contract.

**COUNT VI – FRAUDULENT MISREPRESENTATION**

173. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

174. To win on a fraudulent-misrepresentation claim, a plaintiff must establish (1) the defendant made a material representation; (2) the representation was false; (3) when the

representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury. *Roberts v. Saffell,* 280 Mich.App. 397, 403; 760 N.W.2d 715 (2008), aff'd 483 Mich. 1089; 766 N.W.2d 288 (2009).

175. Defendant Botbyl, on behalf of Defendant City, made a material representation to Plaintiffs that a retail cannabis license will be issued to JGB.

176. That representation was false.

177. Defendants Botbyl and City either knew the representation was false, or made the representation recklessly, without knowledge of its truth, and as a positive assertion.

178. Defendants Botbyl and City made the representation with the intention that Plaintiffs should act on it.

179. Plaintiffs acted in reliance on the representation by proceeding with the purchase of the Property and beginning their efforts to construct a retail cannabis establishment on the Property.

180. Plaintiffs have now suffered injury because they own Property within the City for the intended purpose of opening a retail cannabis establishment, but the City is now limited to issuing only one additional retail license.

181. Plaintiffs have been financially damaged and also have suffered irreparable injuries due to the Defendants' fraudulent misrepresentation.

**COUNT VII – NEGLIGENT MISREPRESENTATION**

182. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

183. A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care. *The Mabel Cleary Trust v The Edward-Marlah Muzyl Trust,* 262 Mich App 485, 502; 686 NW2d 770 (2004), quoting *Law Offices of Lawrence J Stocker, PC v Rose,* 174 Mich App 14, 30; 436 NW2d 70 (1989).

184. As the City Manager for the City of Menominee, Defendant Botbyl's responsibilities include promoting the Menominee area and cultivating existing businesses to grow and develop as successful employee generators, as well as promoting intergovernmental cooperation and helping potential developers through the regulatory requirements of projects.[1]

185. Defendant Botbyl owed a duty of care to Plaintiffs to help them through the regulatory requirements of projects, including JGB's development and construction of a retail cannabis establishment on the Property.

186. Defendant Botbyl, on behalf of Defendant City, made a material representation to Plaintiffs that a retail cannabis license will be issued to JGB.

187. Defendant Botbyl made the representation without reasonable care.

188. Plaintiffs justifiably relied upon the representation to its detriment by proceeding with the purchase of the Property and beginning their efforts to construct a retail cannabis establishment on the Property.

189. Plaintiffs have now suffered injury because they own Property within the City for the intended purpose of opening a retail cannabis establishment, but the City is now limited to issuing only one additional retail license.

---

[1] City Manager Responsibilities, https://www.menominee.us/city-manager/page/responsibilities (last visited July 8, 2026).

190. Plaintiffs have been financially damaged and also suffered irreparable injuries due to the Defendants' fraudulent misrepresentation.

**COUNT VIII – UNJUST ENRICHMENT**

191. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully set forth herein.

192. The City accepted JGB's payments for its Permit Application and administrative fee.

193. The City accepted JGB's payment for its Land Division and Boundary Line Application.

194. Plaintiffs acted in reliance on Defendants' representations that a retail permit will be issued upon the completion of state and local inspections and receipt of certificate of occupancy.

195. Specifically, Plaintiffs Menominee proceed with closing on the Property in early June 2025 for a purchase price of $1,750,000.00.

196. On June 2, 2025, the Seller executed a Warranty Deed conveying the Property to 1101 7th Menominee LLC, JGB's affiliate.

197. Defendants made these representations with the intent and full understanding that Plaintiffs would act upon them and spend considerable resources to purchase and develop the Property.

198. In reliance on Defendants' representations, Plaintiffs acquired the Property at a significant premium, which benefited the City by increasing the City's real estate tax base even though JGB now cannot develop the Property for its intended purpose.

199. Plaintiffs have incurred over $1,750,000.00 in acquiring, redrawing boundary lines, and developing architectural plans for the Property.

200. These costs were all incurred based on the City's representations that JGB will receive a retail business license upon completion of state and local inspections and an occupancy permit.

201. The City has received the benefit of Plaintiffs' expenditures, and the City has been unjustly enriched at Plaintiffs' expense with both the fees it charged and took from Plaintiffs, as well as the increased tax revenue to the City from the Property.

**COUNT IX – PROMISSORY ESTOPPEL**

(In the alternative to Count V)

202. Promissory estoppel is a judicially created doctrine that was developed as an equitable remedy applicable in common-law contract actions.

203. The elements of promissory estoppel are: (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. *McMath v Ford Motor Co,* 77 Mich App 721, 725 (1997).

204. Promissory estoppel developed to protect the ability of individuals to trust promises in circumstances where trust is essential. It is the value of trust that forms the basis of the entitlement to rely. *State Bank of Standish v Curry,* 442 Mich 76, 83-84 (1993) (citing Farber & Matheson, *Beyond promissory estoppel: Contract law and the "Invisible Handshake,"* 52 U Chi L R 903, 928, 942 (1985)).

205. Promissory estoppel is an exception to general contract principles in that it permits enforcement of a promise that may have no consideration. *State Bank of Standish v Curry,* 442 Mich 76, 96; 500 NW2d 104 (1993). Because of this exception, the promise must be definite and clear. *Id.* (citing *McMath v Ford Motor Co*, 77 Mich App 721, 726; 259 NW2d 140 (1997)).

206. Here, Defendant Botbyl, on behalf of Defendant City, made a definite and clear promise to Plaintiffs that a retail license will be issued after completion of inspections and issuance of an occupancy permit.

207. Based on this promise, Defendant Botbyl should have reasonably expected to induce action of a definite and substantial character on the part of Plaintiffs – specifically, Plaintiffs' decision to proceed with purchasing and beginning its efforts to develop the Property into a retail cannabis establishment.

208. In fact, several days after Defendant Botbyl's promise, Plaintiffs proceeded with purchasing the Property and beginning their efforts to develop the property into a retail cannabis establishment.

209. If Defendant City refuses to grant JGB a marijuana retail license, Plaintiffs will suffer significant injustice.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiffs, JGB Holdings, LLC and 1101 7th Menominee LLC, respectfully request that this Honorable Court:

A. Issue an order enjoining the Defendants from issuing any other marijuana establishment licenses or permitting any other marijuana establishments to open in Menominee until such time that the instant matter is heard;

B. Issue an order declaring that JGB Holdings, LLC is entitled to receive a retail license for operation of its retail cannabis establishment upon construction of the establishment on the Property, completion of State and Local inspections, and receipt of an occupancy permit.

C. Issue an order declaring that the New Waiver is unconstitutional, invalid, and unenforceable under the First Amendment as it infringes on Plaintiffs' right to petition the government;

D. Issue an order compelling specific performance by Defendant City to grant JGB Holdings, LLC a retail license upon the completion of State and Local inspection and receipt of an occupancy permit following JGB Holdings, LLC's construction of its retail cannabis establishment on the Property;

E. Award Plaintiffs monetary damages for their financial losses;

F. Award Plaintiffs their attorneys' fees and costs for bringing this action;

G. Award Plaintiffs punitive damages; and

H. Grant such other relief as is just and appropriate.

Respectfully submitted,

John S. Gilliam (P81421)
*Attorney for JGB Holdings, LLC and 1101 7th Menominee LLC*
1100 West Maple Road
Troy, MI 48084
(248) 647-9999
johngilliam@wildbillstobacco.com

Dated: July 10, 2026